IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| JOHNNIE LITTLE, for herself as natural mother of SHAWNTINICE POLK, who was born March 27, 1983, and died September 26, 2005, and on behalf of all A.R.S. § 12-611, et seq. beneficiaries, if any, <br><br> Plaintiff/Appellant, <br><br> v. <br><br> STATE OF ARIZONA, <br><br> Defendant/Appellee. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

2 CA-CV 2010-0079
DEPARTMENT A

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20085379

Honorable Kenneth Lee, Judge

AFFIRMED

Stompoly & Stroud
  By John G. Stompoly                                                      Tucson
                                                  Attorneys for Plaintiff/Appellant

Terry Goddard, Arizona Attorney General
  By Catherine M. Stewart                                                  Tucson
  and Daniel P. Schaack                                                    Phoenix
                                                  Attorneys for Defendant/Appellee

E S P I N O S A, Judge.

¶1 Johnnie Little appeals from the trial court's grant of summary judgment in favor of the state and its denial of her cross-motion for summary judgment in this medical malpractice action for the wrongful death of Little's daughter, Shawntinice Polk. For all of the reasons set forth below, we affirm.

## Factual and Procedural Background

¶2 "On appeal from a summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered and draw all justifiable inferences in [her] favor." *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, ¶ 2, 212 P.3d 853, 855 (App. 2009). Polk, a member of the University of Arizona's women's basketball team, died after collapsing in a training room on September 26, 2005. The cause of death was a pulmonary thromboembolism due to deep-vein thrombosis. For over a year before her death, Polk had received primary medical care from Dr. Donald Porter at the University of Arizona's Campus Health Service.

¶3 When Little came to Tucson from her home in California for Polk's memorial service, she was approached by Len Johnson, a local television reporter, who was planning to make a documentary film about Polk's death. Little authorized Johnson to obtain Polk's medical records and investigate the circumstances surrounding her

death.[1]   After obtaining those records, Johnson consulted with four different physicians regarding Polk's symptoms and the medical care she had received.

¶4        On July 1, 2007, Johnson filed on Little's behalf a complaint against Dr. Porter with the Arizona Medical Board (the Board),[2] asserting that Porter had been medically negligent in his care of Polk.  The complaint stated it was "authorized and urged by Polk's mother, Johnnie Little"; that Little was working with Johnson; and that Johnson was "writing in conjunction with and on behalf of the mother."  The complaint set forth a number of the symptoms Polk exhibited before her death and asserted, "We have concluded that while clots are not easily detected, the warning signs and symptoms in this case [we]re too numerous and obvious to ignore and that Dr. Donald Porter fell below the standard of care when treating this patient."  Little authorized Johnson to prepare and file the complaint as well as to appear and testify at the ensuing Board hearing.[3]

---

[1]Later, in January 2008, after much of the investigation had been completed, Little and Johnson entered into an agreement for Johnson to receive ten percent of any settlement Little might receive in connection with Polk's death.

[2]The Board, previously known as the Arizona State Board of Medical Examiners, is the state agency that licenses and regulates physicians in Arizona. *Murphy v. Bd. of Med. Examiners*, 190 Ariz. 441, 446, 949 P.2d 530, 535 (App. 1997).

[3]The complaint also contained allegations that others had committed misconduct and contributed to Polk's death, including an allegation that University of Arizona basketball personnel and another physician had delayed life-saving treatment on the morning of her death.  But, because the Board required the complaint to be filed against a single party, Johnson primarily directed the complaint at Dr. Porter.

¶5        On February 7, 2008, the Board ruled that Porter's care of Polk constituted "unprofessional conduct" in violation of A.R.S. § 32-1401(27)(q).  It issued a letter of reprimand for Porter's having failed to consider and pursue a diagnosis of pulmonary embolus, to perform an adequate examination, and to measure vital signs.  On May 15, 2008, Little filed a notice of claim with the state pursuant to A.R.S. § 12-821.01.  In recognition of the 180-day time limit for filing such claims, *see* § 12-821.01(A), Little asserted her claim had not accrued until the date of the Board's February 7, 2008, decision.  She alternatively claimed the time limit should be equitably tolled.

¶6        The state moved for summary judgment based on the untimeliness of Little's notice of claim.  The trial court granted the motion, ruling that, because Johnson was Little's authorized agent and Little specifically had approved his filing the Board complaint on July 1, 2007, her May 2008 notice of claim was untimely.  The court also denied Little's cross-motion for summary judgment, in which she had argued that her notice of claim was timely because her cause of action did not accrue until the Board issued its decision and, alternatively, that any untimeliness should be excused under the doctrines of equitable estoppel and tolling.  We have jurisdiction over Little's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(B).

**Discussion**

**¶7** Little argues the trial court erred in granting summary judgment in favor of the state based on its finding that her notice of claim had been filed untimely.[4] The entry of summary judgment is appropriate "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). "In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, ¶ 15, 165 P.3d 173, 177 (App. 2007).

**Timeliness of Notice of Claim**

**¶8** Under A.R.S. § 12-821.01(A), a party wishing to assert a claim against a public entity first must file a notice of claim within 180 days after the cause of action accrues. Any claim not filed within this time limit is barred. *Id.*; *see Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, ¶ 10, 144 P.3d 1254, 1256 (2006).

**¶9** A cause of action accrues under § 12-821.01 "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause,

---

[4]Little also purports to preserve other issues raised below but not addressed on appeal and "asks this Court to consider them as though set forth herein." Our rules do not permit either the preservation or raising of issues in this manner; instead, any argument not developed on appeal is deemed waived. *See* Ariz. R. Civ. App. P. 13(a)(6) ("An argument . . . shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); *Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, n.2, 154 P.3d 391, 394 n.2 (App. 2007) (appellant's failure to develop and support argument waives issue on appeal).

source, act, event, instrumentality or condition which caused or contributed to the damage." § 12-821.01(B). The term "accrual" is construed in accordance with the common law discovery rule, which "provides that a cause of action accrues when a plaintiff discovers or reasonably should have discovered the injury was caused by the defendant's negligent conduct." *Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 197 Ariz. 87, ¶ 10, 3 P.3d 1007, 1010 (App. 1999). The relevant inquiry is when did a plaintiff's "'knowledge, understanding, and acceptance in the aggregate provide[] sufficient facts to constitute a cause of action.'" *Walk v. Ring*, 202 Ariz. 310, ¶ 23, 44 P.3d 990, 996 (2002), *quoting Doe v. Roe*, 191 Ariz. 313, ¶ 36, 955 P.2d 951, 962 (1998).

¶10 Here, we must determine whether the trial court correctly concluded that Johnson's filing the Board complaint on Little's behalf marked the accrual of her claim for purposes of § 12-821.01(B). Little argues a number of reasons why it did not, contending she did not know the contents of the Board complaint, Johnson's opinion that Dr. Porter was negligent cannot be imputed to her, and "the cause of action d[id] not accrue until a medical expert t[old her] she was injured as a result of medical negligence," which she maintains did not occur until the Board issued its decision. She further argues that the filing of the Board complaint could not cause the 180-day period to accrue because, "when Johnson told [her] he filed the [Board] complaint, neither had the slightest idea that Johnson's opinion about Dr. Porter's negligence could cause Little's cause of action to accrue."

6

¶11    We find these arguments unavailing and agree with the trial court that Little's cause of action accrued as a matter of law no later than the date the Board complaint was filed. The Board is charged with investigating complaints filed against physicians who may be "medically incompetent," "guilty of unprofessional conduct," or "mentally or physically unable safely to engage in the practice of medicine," A.R.S. § 32-1451(A), and its "primary duty is 'to protect the public from unlawful, incompetent, unqualified, impaired or unprofessional practitioners,'" *Murphy v. Bd. of Med. Examiners*, 190 Ariz. 441, 446-47, 949 P.2d 530, 535-36 (App. 1997), *quoting* A.R.S. § 32-1403(A). When Little took the significant step of essentially alleging Porter's malpractice to the Board, she not only initiated an investigation into Porter's treatment of Polk but expressly identified the actors and events that "caused or contributed to [her] damage." § 12-821.01(B); *see also Keonjian v. Olcott*, 216 Ariz. 563, ¶¶ 15-16, 169 P.3d 927, 930 (App. 2007) (attorney malpractice cause of action accrued as matter of law when plaintiff made sworn statements concerning attorney's mishandling of transaction).

¶12    By authorizing and knowing about the filing of the Board complaint against Porter, even if she did not read its contents, Little demonstrated that, as of that time, her "'knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.'" *Walk*, 202 Ariz. 310, ¶ 23, 44 P.3d at 996, *quoting Doe*, 191 Ariz. 313, ¶ 36, 955 P.2d at 962. "A plaintiff need not know *all* the facts underlying a cause of action to trigger accrual" but "must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Doe*, 191

Ariz. 313, ¶ 32, 955 P.2d at 961; *see also Stulce*, 197 Ariz. 87, ¶ 10, 3 P.3d at 1010 ("[A] cause of action accrues when a plaintiff discovers or reasonably should have discovered the injury was caused by the defendant's negligent conduct."); *Floyd v. Donahue*, 186 Ariz. 409, 412, 923 P.2d 875, 878 (App. 1996) (cause of action accrued as matter of law when plaintiff began treatment at sexual abuse center, showing she "had reason to know her father's abuse [had] caused her injury").

¶13        Here, although Little contends she was unaware of Porter's negligence until the Board had ruled on her complaint against him, her Board complaint detailed Polk's symptoms and warning signs as well as Porter's allegedly inadequate treatment. The complaint also alleged that other state actors had contributed substantially to Polk's death.[5] Thus, we reject Little's argument that her cause of action did not accrue until she had received an "expert medical opinion of malpractice." At oral argument, Little's counsel asserted that *Walk* was the primary case supporting her theory, but in fact *Walk* undercuts her assertion. *Walk* explains that "the core question" as to when a cause of action accrues is when a "reasonable person would have been on notice" to investigate whether negligent conduct may have caused her injury; it does not provide or suggest that a plaintiff first must receive an expert medical opinion stating that malpractice has occurred, which is the litmus test Little proposes. 202 Ariz. 310, ¶ 24, 44 P.3d at 996.

---

[5]Although the Board complaint, notice of claim, and civil complaint all allege that other university employees also had contributed to Polk's death, because Little now contends that her cause of action did not accrue until the Board reprimanded Dr. Porter, we conclude she has waived any argument that her notice was timely as to any of those individuals.

8

Here, consistent with *Walk*, by the time Johnson had filed the Board complaint, Little, through Johnson, already had commenced an investigation into whether Porter had been negligent, including consulting with four different physicians, and then submitted detailed findings and conclusions in the Board complaint. We therefore conclude the trial court correctly found Little's notice of claim untimely and her claim barred by § 12-821.01.[6]

**¶14** Furthermore, despite her arguments to the contrary, because Johnson had been acting as Little's agent, his filing of the complaint is imputed to her. The undisputed facts demonstrate Little knew of and specifically authorized Johnson to file the Board complaint; therefore, he was acting as Little's agent when he did so on her behalf. *See Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 126, 613 P.2d 283, 286 (1980) (express agency created when principal delegates authority to agent to perform certain act); *see also Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 215 Ariz. 589, ¶ 21, 161 P.3d 1253, 1259 (App. 2007) (agency relationship may be determined as matter of law when relevant material facts not in dispute).

**¶15** Because "an agent's acts bind the agent's principal," *Queiroz v. Harvey*, 220 Ariz. 273, ¶ 8, 205 P.3d 1120, 1122 (2009), "when an agent acts . . . it is as if the principal herself has acted," *Barlage v. Valentine*, 210 Ariz. 270, ¶ 16, 110 P.3d 371, 376 (App. 2005). Thus, Little herself effectively filed the Board complaint alleging Dr.

---

[6]Although determinations of when discovery occurs and a cause of action accrues are often jury questions, *see Walk*, 202 Ariz. 310, ¶ 23, 44 P.3d at 996, we conclude for the reasons stated above that the trial court correctly decided the issues here as a matter of law.

9

Porter "fell below the standard of care when treating" Polk. And, contrary to Little's assertion, whether either Johnson or Little realized the potential legal implications of filing the Board complaint is immaterial. *See, e.g.*, *Barlage*, 210 Ariz. 270, ¶¶ 12-17, 110 P.3d at 375-76 (service of process by mail legally binding on principal under agency theory because principal had authorized UPS store to accept certified mail for her; lack of explicit authorization to accept service of process did not change result); *see also Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, ¶ 27, 234 P.3d 623, 630 (App. 2010) (rejecting vagueness challenge to § 12-821.01 claiming persons "of ordinary intelligence" do not know what statute requires). Accordingly, we could affirm the trial court's grant of summary judgment on this basis as well.[7]

**Equitable Estoppel and Tolling**

¶16 Little next contends that, even if her notice of claim was untimely, the trial court erred by denying her cross-motion for summary judgment because the court "should . . . have found [that] the State was equitably estopped from raising the timeliness defense or that A.R.S. § 12-821.01[(A)] was equitably tolled by the conduct of Little's attorneys." "The notice of claim statute is 'subject to . . . estoppel and equitable tolling.'" *Jones v. Cochise County*, 218 Ariz. 372, ¶ 22, 187 P.3d 97, 104 (App. 2008), *quoting Pritchard v. State*, 163 Ariz. 427, 432, 788 P.2d 1178, 1183 (1990). Because both are

---

[7]Because we affirm the trial court's judgment based on the filing date of the Board complaint, we need not reach the state's alternative argument that Little's claim accrued on September 13, 2007, the date her second attorney wrote to her about the case.

equitable doctrines, the trial court acts as the fact-finder and determines if they should apply. *See McCloud v. State*, 217 Ariz. 82, ¶ 9, 170 P.3d 691, 695 (App. 2007).

¶17        In support of her estoppel argument, Little points to the fact that a state insurance adjuster opened a file after Polk's death, implies the adjuster may have prevented Porter from contacting Little, and suggests the adjuster attempted to delay Little's and Johnson's receipt of Polk's medical records. These assertions, however, are not only speculative but do not demonstrate the trial court erred. The undisputed facts show that any delay in obtaining Polk's medical records had been substantially remedied by the time Johnson filed the Board complaint and thus was irrelevant to Little's subsequent delay in filing her notice of claim. And Little has failed to explain how a state adjuster's opening a file or allegedly preventing Porter from contacting her should estop the state from relying on the notice-of-claim statute, especially when the court did not deem her claim to have accrued until almost two years after Polk's death when Johnson filed the Board complaint on Little's behalf. Furthermore, the cases on which she relies are distinguishable and do not compel a contrary result. *See Jones*, 218 Ariz. 372, ¶¶ 27-29, 187 P.3d at 105-06 (county waived affirmative defense based on notice-of-claim statute by actively engaging in discovery on merits); *McCloud*, 217 Ariz. 82, ¶¶ 17-19, 170 P.3d at 697-98 (affirming trial court's decision not to apply equitable tolling based on attorney's illness and family circumstances). Accordingly, we cannot

conclude the court erred in refusing to find the state equitably estopped from asserting the notice-of-claim statute as an affirmative defense.[8]

¶18 Little also argues the trial court should have equitably tolled the deadline for filing her notice of claim because of her attorneys' actions. Two different attorneys declined to represent Little after initially investigating her case, the first without explanation and the second because he believed Little already had missed her filing deadlines. Little claims the first attorney failed to obtain Dr. Porter's records and the second attorney, despite receiving the records, "apparently did not have those records reviewed by a medical expert" and also apparently failed to review the Board complaint or talk to the physicians with whom Johnson had spoken.

¶19 Again, however, Little has failed to demonstrate that the trial court erred in refusing to apply equitable tolling to her claim. Equitable tolling applies only in

---

[8]Citing *Walk*, Little also asserts that, "[i]f a doctor suspects his treatment may have been negligent or even if he believes [it] was entirely proper, but knows that another doctor thinks his treatment may have been below the standard of care," the physician "has a fiduciary duty to voluntarily tell the patient not only what he knows, but what he is chargeable with knowing and his failure to do so will toll the statute of limitations." She then claims any such duty Porter may have owed Polk "was and should have been equitably and equally owed to Little." Because Little has not adequately developed this argument, however, we do not consider it further. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 88, 181 P.3d 219, 242 (App. 2008) (appellate court will not address issues or arguments waived by party's failure to develop them in briefs). In any event, under *Walk,* any tolling would continue only as long as the plaintiff remained unaware of the pertinent facts. 202 Ariz. 310, ¶¶ 35, 42-43, 44 P.3d at 999, 1001 (if fraudulent concealment established, statute of limitations tolled until plaintiff has actual knowledge of claim). As set forth above, because Little knew of and authorized the filing of the Board complaint, which was essentially a malpractice allegation against Porter, she cannot rely on any failure by Porter to affirmatively disclose his alleged negligence as justifying her subsequent delay in filing her notice of claim.

"extraordinary circumstances" and not to "'a garden variety claim of excusable neglect.'" *McCloud*, 217 Ariz. 82, ¶ 16, 170 P.3d at 697, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Even assuming the first two attorneys Little consulted had acted improperly, she has not explained how their actions created extraordinary circumstances warranting the application of the doctrine. *Cf. McCloud*, 217 Ariz. 82, ¶ 19, 170 P.3d at 698 (explaining, in cases of attorney illness, "courts have only applied the doctrine of equitable tolling where the attorney had suffered a significant incapacitating disability").

¶20 Moreover, the cases on which Little relies are inapposite. *See United Liquor Co. v. Stephenson*, 84 Ariz. 1, 6-7, 322 P.2d 886, 889-90 (1958) (party bound by settlement because she had authorized attorneys to settle and settlement not "grossly unfair"); *Zimmerman v. Shakman*, 204 Ariz. 231, ¶ 23, 62 P.3d 976, 982 (App. 2003) (court should not dismiss case for discovery violation without first determining whether fault was attorney's or party's); *Wayne Cook Enters., Inc., v. Fain Props. Ltd. P'ship*, 196 Ariz. 146, ¶¶ 11-12, 993 P.2d 1110, 1112-13 (App. 1999) (error to dismiss lawsuit based on discovery violation absent determination whether client or attorney at fault); *Montgomery Ward & Co. v. Superior Court*, 176 Ariz. 619, 622-23, 863 P.2d 911, 914-15 (App. 1993) (trial court must determine whether party personally at fault in discovery process before striking answer). Accordingly, we affirm the trial court's decision on this basis as well.

**Disposition**

¶21     For the reasons stated, we affirm the trial court's grant of summary judgment in favor of the state and its denial of Little's cross-motion for summary judgment.


                                        /s/ _Philip G. Espinosa_____
                                        PHILIP G. ESPINOSA, Judge

CONCURRING:


/s/ _J. William Brammer, Jr._____
J. WILLIAM BRAMMER, JR., Presiding Judge


/s/ _Joseph W. Howard_____
JOSEPH W. HOWARD, Chief Judge